Tucker, Richard T., J.
The plaintiff, Let’s Adopt! Global, Inc. (“LAG”), alleges that the defendants engaged in a series of Internet postings designed to defame and damage LAG. The following defendants have submitted motions to dismiss for lack of personal jurisdiction, pursuant to Mass.R.Civ.P. 12(b)(2): Elizabeth Duvall (“Duvall”), Tracey M. Benzel (“Benzel”), Ciystal Donovan (“Donovan”), Carol Vierela(“Vierela”), Claire Talltree (‘Talltree”), Devin Hardin (“Hardin”), Georgina Rathbone Tinnon (“Tinnon”), Angela Bratcher Bess (“Bess”), and Marcella Janes (“Janes”) (collectively, “the defendants”). For the following reasons, the defendants’ Motions to Dismiss are ALLOWED.
BACKGROUND
For the purposes of a jurisdictional analysis pursuant to Mass.R.Civ.P. 12(b)(2), the court takes “specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe [s] them in the light most congenial to the plaintiffs jurisdictional claim.” Cepeda v. Kass, 62 Mass.App.Ct. 732, 738 (2004).
LAG is a non-profit corporation that was organized under the laws of the Commonwealth on December 6, 2011. It maintains a principal place of business located at 56 Everett Street in Southbridge, Massachusetts. LAG was founded as an animal welfare and rescue group. LAG engages in providing rescue, rehabilitation, and shelter for abused and neglected animals. These services are performed in Massachusetts, as well as other locations worldwide. As part of its operation to bring awareness to abused and neglected animals, LAG maintains a Facebook page. Partially through this Facebook page, LAG raises money for animals in need.
There are other chapters of LAG around the world. Indeed, LAG’S articles of incorporation state that LAG is committed to “assistfing], encouragfing], support[ing] and promoting] animal protection, care, permanent placement into maturing homes, and humane educational activities of animal welfare organizations throughout the United States and abroad.”
LAG maintains that the defendants engaged in a relentless and malicious defamation campaign against it. This alleged defamation was published on various websites, social media, and Internet broadcast programs. The following is an account of the defamation claims relating to each of the individual defendants.
*574 I. Facts Relating to Duvall
Duvall lives and resides in California. She has never been to Massachusetts. LAG alleges that she posted defamatoiy statements about it on Facebook. These postings allege that LAG is a fraudulent company that collects money from people while letting the animals it claims to protect die. Duvall asserts that any postings to social media sites or other Internet sites were made from her own computer. She also claims that the posts were not directed at residents of Massachusetts and were intended to be read by users of the Internet generally and worldwide. Duvall admitted at the hearing on this matter that she made donations to LAG and also participated in an adoption of an animal before LAG’S incorporation.[3]
II. Facts Relating to Benzel
Benzel is a resident of Pennsylvania. She has never visited the Commonwealth. LAG alleges that in addition to defamatoiy Facebook postings, Benzel is responsible for an Internet broadcast program that alleged LAG was a fraud and is guilty of torturing animals. During the program, Benzel and other contributors urged listeners to report LAG to authorities in Massachusetts.[4] Benzel alleges she was located in Pennsylvania at the time of her postings and Internet broadcast program. Further, after the litigation in this case had commenced, Benzel submitted a complaint to the Massachusetts Attorney General’s Office about LAG.
III.Facts Relating to Donovan
Donovan is a resident of Oregon. She has never been to Massachusetts. LAG alleges that she is responsible for posting various defamatoiy statements about it on Facebook. These statements included allegations that LAG is using and abusing animals to make a profit off of donations. Donovan also states that she never directed her posts to residents of Massachusetts, but rather, that the posts were meant to be read by a worldwide audience. She admitted at the hearing on this matter that she made three donations to LAG, totaling approximately $110. Further, she admitted that she submitted a complaint to the Massachusetts Attorney General’s Office regarding LAG’S operations.
IV.Facts Relating to Vierela
Vierela is a resident of North Carolina. She has never visited Massachusetts. LAG avers that Vierela posted defamatoiy statements about it on Facebook and the Internet. In those postings, LAG states that Vierela accused LAG of abusing animals and stated that the founder of LAG was akin to a “rapist, child abuser, and a murderer.” Vierela further boasted on the Internet that she was responsible for destroying certain LAG fundraising campaigns. Vierela states that all of her postings occurred from her home in North Carolina. She further contends that her posts were meant to be read by all users of the Internet and were not directed at Massachusetts residents specifically. At the hearing, Vierela admitted she made donations to LAG and assisted in an animal adoption before LAG’s incorporation.
V. Facts Relating to Talltree
Talltree is a resident of Washington state. She has never been to Massachusetts. LAG contends that Talltree posted various defamatory statements about it on Facebook and other Internet websites. These statements included allegations that LAG was torturing animals and laundering funds. Talltree alleges that she did not direct these postings at the Commonwealth. At the hearing on this matter, the parties noted that at some point, Talltree approached LAG about adopting an animal.
VI. Facts Relating to Hardin
Hardin lives in Georgia. She visited the Commonwealth once, in 1994. LAG avers that Hardin made various defamatoiy statements about it on Facebook, including statements that LAG conducted immoral experiments on animals. Hardin maintains that these statements were aimed at the general worldwide public, and not necessarily Massachusetts residents. She also admitted at the hearing that after the commencement of litigation, she submitted a complaint against LAG to the Massachusetts Attorney General’s Office.
VII. Facts Relating to Tinnon
Tinnon currently resides in the United Kingdom. She temporarily visited the United States, but has returned home, and currently has no plans to visit the United States again. Although she has been to the United States, she has never visited Massachusetts. LAG alleges that Tinnon also made defamatory statements about it on Facebook and other Internet websites. These statements involved allegations that LAG murdered and abused animals. Tinnon states that she did not aim these comments at the citizens of Massachusetts.
VIII. Facts Relating to Bess
Bess is a resident of Tennessee. Bess has only driven through the state of Massachusetts. LAG alleges that she published defamatory statements about it on Facebook and other Internet websites. Specifically, LAG avers that Bess posted that LAG is a fraud and a cult. Bess contends that these statements were not directed at Massachusetts residents. At the hearing on this matter, Bess admitted that she donated one cent to LAG in 2012. LAG contends that the purpose of this nominal donation was to pursue a fraud claim.
IX. Facts Relating to Janes
Janes is a resident of California. She has never visited the Commonwealth.- LAG avers that she posted various defamatoiy statements about it on Facebook, Internet websites, and her own personal rescue page. These statements included allegations that LAG was perpetrating a fraud and “preyed upon animal advocates.” Janes contends that these statements were not *575 aimed at the citizens of Massachusetts. She also admitted at the hearing to complaining to the Massachusetts Attorney General’s Office about LAG.
DISCUSSION
I. Standard of Review
When confronted with a motion to dismiss under Mass.RCiv.P. 12(b)(2), the plaintiff bears the burden of establishing facts sufficient to show that the court may exercise personal jurisdiction over the defendant. See Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). The courtviews these jurisdictional facts in the light most favorable to the plaintiff. Cepeda, 62 Mass.App.Ct. at 738. However, the court does not have to “credit conclusoiy accusations or draw farfetched inferences.” Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F.Sup.2d 102, 108 (D.Mass. 2003), quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).
II. Analysis
A court of the Commonwealth may exercise personal jurisdiction over a non-resident defendant if the defendant’s conduct falls within the limits of the Massachusetts longarm statute, G.L.c. 223A, §3(a)-(h). In addition, the exercise of personal jurisdiction must comply with the due process requirements of the United States Constitution. See Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). These two inquiries often converge into one single analysis because G.L.c. 233A “functions as ‘an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.’ ” Id. at 6, quoting “Automatic” Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972). Thus, the court will begin its jurisdictional analysis with the requirements of the due process clause.
A. Due Process
A state court may exercise jurisdiction over a nonresident only if the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. A nonresident’s physical presence within the territorial jurisdiction of the court is not required; however, the nonresident defendant must have “certain minimum contacts . . . such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940). An inquiry regarding the defendant’s minimum contacts with the forum state “focuses on ‘the relationship among the defendant, the forum, and the litigation.’ ” Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984), quoting Shaffer v. Hettner, 433 U.S. 186, 204 (1977).
There are two types of personal jurisdiction, general and specific. “General jurisdiction ‘exists when the litigation is not directly founded on the defendant’s forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.’ ” Massachusetts Sch. of Law v. American Bar Ass’n, 142 F.3d 26, 34 (1st Cir. 1998), quoting United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Here, LAG does not allege that this court can exercise general jurisdiction over the defendants. Rather, LAG alleges that this court may exercise specific jurisdiction over the defendants.
1. Specific Jurisdiction
“Specific jurisdiction exists when there is a demonstrable nexus between a plaintiffs claim and a defendant’s forum-based activities, such as when the litigation itself is founded directly on those activities.” Massachusetts Sch. of Law, 142 F.3d at 34 (citation omitted). “Determining whether the plaintiff has alleged sufficient facts for a finding of specific jurisdiction requires a three-part analysis.” United States v. Swiss Am. Bank Ltd., 274 F.3d 610, 621 (1st Cir. 2001). To support a finding of specific jurisdiction, the plaintiff must demonstrate that: (1) the litigation relates to the defendant’s forum-state activities; (2) that the defendant purposefully availed themselves of the privilege of conducting activities in the state; and (3) jurisdiction over the defendant is reasonable in light of the five “gestalt factors.” Id. “An affirmative finding on each of the three elements of the test is required ...” Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).
a. Relatedness
The first inquiry in the three-part test requires the court to determine whether the claim underlying the litigation arises out of, or directly relates to, the defendant’s in-state activities. Id. This requirement, known as the relatedness requirement, “focuses on the nexus between the defendant’s contacts and the plaintiffs cause of action.” Ticketmaster-New York, Inc., 26 F.3d at 206. In essence, the plaintiff must establish that the “cause in fact (i.e., the injury would not have occurred ‘but for’ the defendant’s forum-state activity) and legal cause (i.e., the defendant’s in-state conduct gave birth to the cause of action).” Massachusetts Sch. of Law, 142 F.3d at 35, quoting United Elec. Radio & Mach. Workers, 960 F.2d at 1089. To satisfy this requirement, a “defendant need not be physically present in the forum state to cause injury (and thus ‘activity’ for jurisdictional purposes) in the forum state.” Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 10 (1st Cir. 2009) (internal quotations and citation omitted).
Here, LAG has alleged enough to satisfy this requirement as it avers that the defamatory material was published in the Commonwealth and that it sustained injuries in the Commonwealth. However, it seems that the link from the defendants’ conduct to the harm occurring in Massachusetts is “attenuated by the intervening activities of third parties ...” Ticketmaster-New York, Inc., 26 F.3d at 201. LAG has not *576 specifically alleged that the Internet postings themselves, although “technically a tort in [their] own right (if defamatory),” inflicted any significant injury, except insofar as the postings led others to retract their donations. Id. Nonetheless, in-forum injury that is related to the plaintiffs claim may be held to be sufficient to satisfy the “flexible, relaxed, standard” of the relatedness requirement. Astro-Med, Inc., 591 F.3d at 9 (citation omitted) (relatedness satisfied as defendant’s conduct occurring in Florida and California, which amounted to breach of contract, caused injury to the plaintiff in Rhode Island).
b. Purposeful Availment
Next, the court must determine if the defendants’ in-state contacts “represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state’s laws and making the defendant’s involuntary presence before the state’s courts foreseeable.” Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995) (citation omitted). The notion of purposeful availment rests upon the concepts of voluntariness and foreseeability. Id. at 1391. Voluntariness requires that the defendant deliberately engage in significant activities in the forum, rather than maintaining contacts that are “random, fortuitous, or attenuated.” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Foreseeability requires that the defendant’s contact with the forum state would lead him or her to “reasonably anticipate being haled into court there.” Id. at 474 (citation omitted).
In the context of defamation cases specifically, purposeful availment is determined by where the effects of the defamatory statements are intended to be felt by the author. Calder v. Jones, 465 U.S. 783 (1984). In Calder, a California resident instituted a libel action in California against two Florida reporters. The libel claims were based on an article written and edited by the defendants for publication in the National Enquirer. In analyzing whether California courts could properly exercise jurisdiction over the defendants, the Supreme Court examined the contacts the defendants created with California, and not just the defendants’ contacts with the plaintiff herself. Id. at 788. The Calder court found that there were ample contacts with the forum as: the defendants relied on California sources for the story; the defendants caused reputational injury in California by writing an article that was widely circulated in the forum state specifically; and the “brunt” of the injury was suffered by the plaintiff in the forum state. Id. at 788-89. “In sum, California [wa]s the focal point both of the story and of the harm suffered!,]” making jurisdiction “proper in California based on the ‘effects’ of their Florida conduct in California.” Id. at 789.
In Walden v. Fiore, 134 S.Ct. 1115, 1121-24(2014), the Supreme Court developed this notion stating that “[t]he crux of Calder was that the reputation-based ‘effects’ of the alleged libel connected the defendants to California and not'just to the plaintiff.” Id. at 1123-24. The connection to California was strengthened through “the nature of the libel tort[,]” because “[h]owever scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by third persons).” Id. at 1124, citing Restatement (Second) of Torts §577, comment b (1976). The Supreme Court elaborated:
the reputational injury caused by the defendants’ story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel,... the defendants’ intentional tort actually occurred in California ... In this way, the “effects” caused by the defendants’ article — i.e., the injury to the plaintiffs reputation in the estimation of the California public — connected the defendants’ conduct to California, and not just to a plaintiff who lived there. That connection, combined with various facts that gave the article a California focus, sufficed to authorize the California court’s exercise of jurisdiction.
Id. (internal citations omitted) (emphasis in original).
Subsequent decisions interpreting the Supreme Court’s conclusion in Calder have reduced the analysis into a three-part test, known as the effects test. This test requires a showing that the defendant: “(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state.” Bancroft & Masters, Inc. v. Augusta Nat’l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000). See also Swiss Am. Bank, Ltd., 274 F.3d at 624 (“Calder focused on the defendant’s intent to cause injury in the forum by aiming their article at the forum resident and then publishing the article there, knowing that the injury would be felt in the forum”).
The first prong of the effects test, which requires the plaintiff to show that the defendant committed an intentional act, is easily satisfied here, as the publishing of allegedly defamatory statements on the Internet was an intentional act. See Walden, 134 S.Ct. at 1124 (publication of defamatory material to third persons is an intentional act that occurs in the forum state).
The second and third prongs are more difficult to satisfy because it must be shown that the “author intended the libel to be felt in the forum state.” Noonan v. Winston Co., 902 F.Sup. 298, 305 (D.Mass. 1995). LAG argues that the defendants intended their message to be felt in the forum state as: (1) the defamatory statements themselves are so outrageous as to attract Massachusetts readers; (2) the defamatory statements were found by Massachusetts residents; and (3) other actions by the defendants support findings of purpose *577 ful availment. The court will address each of these arguments in turn.
LAG initially argues that the defamatory statements themselves are enough to satisfy the second prong of the effects test because “[t]he content of the defamation shows the intentional and malicious effort by these defendants to attack and destroy the very purpose of LAG. The defamation is such that the defendants, [ ] each of them, should have reasonably anticipated being haled into court in Massachusetts.”
This court does not agree. Defamatory statements standing alone, outrageous as they may be, may not serve as a basis to exercise jurisdiction based on the applicable case law. Unlike the situation in Calder, LAG does not allege that the defamatory statements were drawn from Massachusetts sources, that the brunt of the harm was suffered in Massachusetts, or that the material was circulated primarily in Massachusetts. Although it may have been foreseeable that the defamatory nature of the statements may have attracted Massachusetts readers, Calder does not “stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.” Swiss Am. Bank, Ltd., 274 F.3d at 623, quoting Bancroft & Masters, Inc., 223 F.3d at 1087.[5]
Next, LAG argues that the “defamation was found by Massachusetts residents.” LAG’s Brief in Opposition to Benzel, p. 8 (emphasis in original). LAG’S treasurer, Raciel Fernandez (“Fernandez”), testifies in her affidavit that as LAG’S treasurer, she has personal knowledge “that various individuals in Massachusetts have read the defendants’ defamation and have contacted LAG to discuss the defamation and to question the veraciiy of the defendants’ false statements and accusations.” Fernandez goes on to state that “at least two (2) Massachusetts residents have requested LAG to return donations due presumably to the defamation published on the internet.” id.[6]
This statement may be enough to prove that LAG felt the injurious effect required by Calder, however, it does not indicate that the “defendants . . . acted toward the forum state with sufficient intent to make them ‘reasonably anticipate being haled into court there.’ ” Noonan, 135 F.3d 90, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There is nothing to indicate that Massachusetts residents, as opposed to the rest of the world, were specifically targeted by the defendants in their defamatory scheme. Allegations that the comments were potentially read by Massachusetts residents, “does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside).” Shrader v. Biddinger, 633 F.3d 1235, 1241 (10th Cir. 2011). Compare Arthur v. Doe, 32 Mass. L. Rptr. 296 (Mass.Super. 2014) (Frison, J.) (court could not properly exercise jurisdiction over defendant as there was no indication that defendant “deliberately directed his message in Massachusetts, or meant to harm [plaintiff] specifically in Massachusetts as opposed to anywhere else”); with Edozien v. XS Micro, LLC, 32 Mass. L. Rptr. 21 (Mass.Super. 2014) (Curran, J.) (jurisdiction appropriate where posting was “plainly aimed at Massachusetts,” referred to plaintiff as Massachusetts resident, and because defendants “likely knew (or should have) that their website posting could have a devastating impact on [plaintiffs] business reputation in Massachusetts”); and Abiomed, Inc. v. Turnball, 379 F.Sup.2d 90, 95 (D.Mass. 2005) (appropriate to exercise jurisdiction over defendant as “defendant was allegedly aware that his Internet postings were being read by Massachusetts residents and, in several instances, [ ] directed his postings to those individuals”).
Finally, in an attempt to show something “more,” LAG states that the defendants engaged in other activities that demonstrate purposeful availment. These activities include: (1) defendants Duvall, Donovan, Vierela, and Bess donated money to LAG at one point; (2) Benzell participated in an Internet broadcast program that urged listeners to report LAG to Massachusetts authorities; (3) defendants Donovan, Hardin, and Janes submitted complaints to the Massachusetts Attorney General’s Office;[7] and (4) defendants Duvall, Vierela, and Talltree participated, or inquired into participating in, animal adoption. The court will analyze the sufficiency of each contention.
Monetary donations or inquiries regarding the adoption of animals are not enough to establish that this court may exercise jurisdiction over the defendants. See Walden, 134 S.Ct. at 1112; Schaffer, 433 U.S. at 204 (jurisdictional inquiry focuses on “the relationship among the defendant, the forum, and the litigation”). Monetary donations and inquiries regarding the adoption of animals connect the defendants only to LAG itself, and not to the forum state and are furthermore completely irrelevant to the defamation claim at hand.
However, complaints to the Massachusetts Attorney General’s Office and statements urging others to do the same, present a more complex jurisdictional question. Although the court is not aware of any case law directly on point with regard to this specific factual situation, writing to the Massachusetts Attorney General’s Office, or urging others to do the same, with the intent to cause LAG to lose its status as a charitable organization is an action that is “purposefully and voluntarily” directed to cause harm to LAG in Massachusetts specifically. Swiss Am. Bank, Ltd., 274 F.3d at 624. See also Sindi v. El-Moslimany, No. 13-10798, 2014 U.S. Dist. LEXIS 168709, *25 (D.Mass. 2014) (“Given that the defendants intentionally directed their negative comments to actual and potential business associates of [plaintiff] in Massachusetts, and did so for the apparent purpose of harming [plaintiffs] reputation and preventing [plaintiff] from developing her *578 business here,” jurisdiction was appropriate); Taylor v. Taylor, 31 Mass. L. Rptr. 526, *2 (Mass.Super. 2013) (Krupp, J.) (‘The acts in question were purposefully-directed to Massachusetts, referenced individual residents in Massachusetts and their company based in Massachusetts, and púrported to be posted by a former employee with knowledge of the plaintiffs’ business practices. The postings were plainly intended to cause harm in Massachusetts”).
The third prong of the effects test, which requires that the defendant know that the harm “is likely to be suffered in the forum state” is also satisfied. Bancroft & Masters, Inc., 223 F.3d at 1087. Having directed allegedly defamatory statements to an important Massachusetts governmental agency, and “given the unflattering nature” of the allegations, “it can be inferred that [the defendants] intended harm to be felt in Massachusetts.” Abiomed, Inc., 379 F.Sup.2d at 95. As it was the defendants’ intention for LAG to lose its charitable status in the Commonwealth, the defendants plainly intended LAG to be harmed specifically in the forum-state.
In light of the above discussion, this court finds that LAG has demonstrated, based upon a narrow band of conduct (considering LAG’S overarching allegations that the defendants engaged in a “campaign” of derogatory statements posted on the Internet), that defendants Benzel, Donovan, Hardin, and Janes have sufficient contacts to evince a “purposeful availment of the privilege of conducting activities in the forum state . . .” United Elec. Radio & Mach. Workers of Am., 960 F.2d at 1089. LAG has failed to show that all other defendants purposefully availed themselves to the Commonwealth. The court will go further in the jurisdictional analysis to consider the application of the gestalt factors in regard to the aforementioned named defendants only.
c. Gestalt Factors
Even if the plaintiff has surpassed the first two jurisdictional hurdles by demonstrating that both the relatedness and purposeful availment requirements have been met, the court’s exercise of jurisdiction must also “comport with fair play and substantial justice.” U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990), quoting Burger King Corp., 471 U.S. at 476. In order to satisfy this notion, the court considers five factors, the so-called “gestalt factors,” that bear upon the fairness of subjecting a nonresident to the jurisdiction of the court. Sawtelle, 70 F.3d at 1394. These factors include: “(1) the defendant’s burden of appearing; (2) the forum state’s interest in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the judicial system’s interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all the sovereigns in promoting substantive social policies.” Id.
This portion of the jurisdictional analysis is often described as a “sliding scale.” Id. Essentially, this means that “[t]he weaker the plaintiffs showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction'. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness.” Id. (internal quotations and citations omitted).
i. Defendants’ Burden of Appearing
The defendants’ “burden, and its inevitable concomitant, great inconvenience, are entitled to substantial weight in calibrating the jurisdictional scales. ” Ticketmaster-New York, Inc., 26 F.3d at 210. Indeed, this factor has been noted by the Supreme Court to be “always a primary concern” when assessing reasonableness. World-Wide Volkswagen Corp., 444 U.S. at 292. However, it is also self-evident that “defending in a foreign jurisdiction almost always presents some measure of inconvenience, and hence this factor becomes meaningful. . . where a party can demonstrate a ‘special or unusual burden.’ ” Sawtelle, 70 F.3d at 1394, quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Most cases which have been dismissed based on unreasonableness “are cases in which the defendant’s center of gravity, be it a place of residence or place of business, was located an appreciable distance from the forum.” Ticketmaster-New York, Inc., 26 F.3d at 210.
Here, LAG has proven the first two elemént of relatedness and purposeful availment against the defendants Benzel, Donovan, Hardin, and Janes. Benzel resides in Pennsylvania, Donovan resides in Georgia, Hardin also resides in Georgia, and Janes resides in California. These defendants are private individuals, not business entities, and there is no evidence in the record that they travel often. Although the defendants have not alleged any “special or unusual burden,” travel from any of these states to the Commonwealth would be extremely burdensome for these private individuals. Furthermore, LAG has not cited any mitigating factors to cushion the defendants’ hardship. This factor weighs strongly against the court’s exercise of jurisdiction.
ii. Forum’s Interest
In regard to the forum’s interest itself, the purpose “is not to compare the forum’s interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest.” Sawtelle, 70 F.3d at 1395, quoting Foster-Miler, Inc. v. Babcock & Wilcox Canada 46 F.3d 138, 151 (1st Cir. 1995) (emphasis in original). “A State generally has a ‘manifest interest’ in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.” Burger King Corp., 471 U.S. at 473, quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957). Here, a Massachusetts company alleges that it is a victim of *579 defamation that has caused the company injury within the Commonwealth. Therefore, Massachusetts has an interest in the outcome of this dispute.
iii. Plaintiffs Interest in Convenient Relief
Courts have “repeatedly observed that a plaintiffs choice of forum must be accorded a degree of deference with respect to the issue of its own convenience.” Sawtelle, 70 F.3d at 1395 (citation omitted). However, besides the consideration of judicial economy, the record does not reveal any information that demonstrates it would be more convenient for LAG to litigate its case in Massachusetts, as opposed to another forum.[8] From what the court can discern, the only key witnesses which reside in Massachusetts are the founder and treasurer of LAG.
iv.Judicial System’s Interest
LAG contends that this factor is satisfied because if it was to pursue the defendants individually in their home states, it would result in many judicial proceedings. Thus, LAG argues, the most efficient method to the resolution of this matter would be to complete the litigation in the Commonwealth. This court agrees. This factor weighs in favor of jurisdiction.
v.Sovereigns’ Interests
This final factor requires the court “to consider the common interests of all sovereigns in promoting substantive social policies.” Sawtelle, 70 F.3d at 1394. One substantive social policy at issue is an interest in preserving citizens’ ability to petition the government. This policy has special protection in the Commonwealth, as the Legislature has enacted a specific statute, G.L.c. 231, §59H, known as the anti-SLAPP statute, to provide protection to citizens who are targeted by lawsuits based on their government petitioning activities.[9] Forcing individuals to travel long distances to defend a suit in which jurisdiction was founded on their petitioning activity seems to contravene this policy. Bearing in mind the Legislature’s protection of this social policy, this factor weighs against the court’s exercise of jurisdiction.
vi.Conclusion
In concluding the gestalt evaluation, it is necessary to review the previous two steps of the jurisdictional analysis, as it is relevant to the weight of reasonableness. See Sawtelle, 70 F.3d at 1394. LAG succeeded in showing that its cause of action related to the defendants’ contacts with the forum and that the defendants purposefully availed themselves to the jurisdiction court. However, the court cannot say that LAG presented a strong showing on either prong. In regards to the relatedness prong, this court found that the link between the defendants’ actions and LAG’S claim was attenuated due to the actions of third parties. Further, purposeful availment was found based upon circumscribed conduct, compared to the whole of LAG’S allegations. The weakness of LAG’S showing on the first two prongs sheds light on the applicability of the gestalt factors in this case.
In terms of the gestalt factors themselves, this court finds that the importance of the two factors weighing against the exercise of jurisdiction — namely the defendants’ burden of travel and the social policy of protecting petitioning activity — significantly supersede the mundane considerations of LAG’S choice of forum, the Commonwealth’s interest in adjudicating the matter, and the interests of judicial administration. To permit the exercise of jurisdiction in this case would be to disregard the court’s commitment to fair play and substantial justice. See Ticketmaster-New York, 26 F.3d at 212 (“A distant court cannot constitutionally exercise in personam jurisdiction over a non-resident defendant at the behest of a plaintiff who can muster only the most tenuous showings of relatedness and purposefulness if, as in this case, forcing the defendant to defend in the forum would be plainly unreasonable”).
Accordingly, this court determines that the exercise of personal jurisdiction over the defendants would offend “traditional notions of fair play and substantial justice.” Milliken, 311 U.S. at 463. As a result, the court need not go any further to analyze the longarm statute in this case. The defendants’ motions must be allowed.[10]
ORDER
It is therefore ORDERED that the defendants’ Motions to Dismiss pursuant to Mass.R.Civ.P. 12(b)(2) are ALLOWED. The complaint shall be DISMISSED against the moving defendants for lack of personal jurisdiction.[11]

 LAG was originally founded in Turkey in 2008. It operated its mission through the Internet and was eventually incorporated in Massachusetts three years later, in the year 2011.

 An unofficial transcript of this Internet broadcast program can be found in the Plaintiffs Exhibit C.

 LAG urges this court to take into consideration the case of Digital Equip. Corp. v. Altavista Tech., Inc., 960 F.Sup. 456, 463-66 (D.Mass. 1997), to support its proposition that the purposeful availment prong has been satisfied because the defamatory statements inherently attract the attention of Massachusetts residents. In that case, the defendants maintained a website which mirrored a Massachusetts corpora *580 tion. The plaintiff argued that this site was in violation of the plaintiffs trademark rights. Id. at 470. As the website mirrored another Massachusetts corporation’s website, it inherently attracted Massachusetts customers, and further the defendant’s products were available to purchase by Massachusetts customers online. Id. at 460, 470. The Digital court held that the purposeful availment prong is satisfied by the defendant’s conduct of “allegedly causing trademark infringement that [the defendant] knows will have an effect on consumers in this state, and an especially harmful effect on [the plaintiff], whose trademark rights are at issue . . .” Id. at 470. The court does not find this case particularly helpful in the instant case, as it is clear that the defendant in Digital sought out Massachusetts residents as customers and engaged in online transactions with residents.

 As the donations were “presumably” requested to be refunded by Massachusetts residents the court cannot say with certainty that the reason for this was due to the defamatory statements.

 Reports made to the Attorney General’s Office after the commencement of this litigation cannot be considered for the purposes of a jurisdictional analysis.

 This court does note that LAG is a corporation with global recognition and was initially founded in Turkey. Therefore, it seems that LAG has far more resources than the defendants to litigate in foreign forums.

 For the purposes of the statute, the exercise of the right of petition is defined, in pertinent part, as: “any written or oral statements made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding . . .” G.L.c. 231, §59H. Submitting a letter to the Attorney General’s Office would be considered petitioning activity.

 Although this court does not reach the question of whether the defendants’ activity satisfies the longarm statute, the court would, given the chance, find that the conduct satisfies G.L.c. 223A, §3(d). That section allows for personal jurisdiction when a defendant “caus[es] tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth.” LAG alleges that defendants’ publication of libelous material was a persistent course of conduct which caused LAG harm in Massachusetts. Furthermore, other courts have held that “posting defamatory material on the internet constitutes an in-forum act for the purposes of [G.L.c. 223A, §3(c)], if it is purposefully directed towards a Massachusetts resident and intended to cause harm in Massachusetts.” Edozien, 32 Mass. L. Rptr. at *4.

 Given this conclusion, the court sees no need to rule on Janes’ Motion to Dismiss for Insufficient Service of Process.