Leibensperger, Edward P., J.
Two individuals who collaborated to author an allegedly defamatory article and to post it on the internet, live in different states. One lives in Boston, Massachusetts and the other lives in Rayne, Louisiana. The party allegedly injured by the defamation sues both individuals in Boston. May the court exercise in personam jurisdiction over the Louisiana resident?
BACKGROUND
Plaintiff, Cardno ChemRisk, LLC (“ChemRisk”), is a Delaware limited liability company with a principal place of business in San Francisco, California. It is a scientific consulting firm with expertise in environmental engineering, ecotoxicology and occupational health. Among its services as a scientific consulting firm, ChemRisk offers expert testimony in litigation. ChemRisk has regularly provided consulting services and expert testimony in Massachusetts. ChemRisk is currently engaged in connection with litigation pending in Middlesex County Massachusetts. It also presents scientific seminars to lawyers in Massachusetts. In all of these endeavors, ChemRisk’s reputation for objectivity, integrity and credibility is of paramount importance. In connection with litigation in Massachusetts, some of ChemRisk’s clients have expressed concern about opposing counsel utilizing the allegedly defamatory article to undermine the credibility of ChemRisk’s expert testimony. A simple Google search regarding ChemRisk by lawyers interested in engaging ChemRisk, or by lawyers looking for cross examination material, turns up the allegedly defamatory article that is the subject of this case.
Defendant, Cherri Foytlin, is a mother of six children. Her six children range in age from seven through eighteen years old. They all live at home with her, and she is the primary care giver. She resides in Rayne, Louisiana. Foytlin describes herself as an “environmental activist.” Much of her work has centered around the infamous BP/Deep Water Horizon explosion and resulting oil spill in the Gulf Coast in 2010, and its effects on Gulf Coast residents and clean-up workers. In that regard, in the spring of 2011, she walked from New Orleans to Washington, D.C., 1,243 miles, to raise awareness of the effects of the BP oil spill. In August 2011 she was part of a Gulf Coast delegation that traveled to Washington, D.C., to meet with federal officials about the BP oil spill. There is no evidence that she, herself, is a party to any litigation, putative class member or a clean-up worker.
Since at least August 2011, Foytlin has collaborated with defendant Karen Savage, a Boston resident. Both were part of the Gulf Coast delegation that traveled to Washington, D.C. in August 2011, to meet with federal officials about the BP oil spill. Both met and corresponded with the National Institute of Environmental Health Sciences, located in North Carolina, concerning the effects of the BP oil spill. In November 2012, Foytlin and Savage drafted a press release regarding the unfairness of a proposed settlement of health and medical claims that was being considered by plaintiffs in litigation with BP. In February, Foytlin and Savage collaborated on a press release and letter that they hand delivered to the Department of Justice in Washington, D.C.
The article that is the subject of ChemRisk’s complaint for defamation is entitled “ChemRisk, BP and Purple Strategies: A Tangled Web of Not-So-Independent Science.” The article was posted by the authors on the Huffington Post website on October 14, 2013. Foytlin identifies herself in the article as a “Gulf Coast based author and journalist” and Savage is identified as having “contributed to this article.” Foytlin and Savage wrote and posted the article as part of their work to influence ongoing governmental proceedings and court cases regarding the oil spill and its clean-up and to advocate that the government protect and compensate clean-up workers for damages caused.
In particular, the subject article addresses whether a 2011 report by ChemRisk regarding the exposure of clean-up workers to certain chemicals was an “inde *131 pendent” study as touted by BP. The article challenges the independence of the ChemRisk report by, among other things, citing ChemRisk’s history of doing the bidding for other polluters. The article references ChemRisk’s work for Pacific Gas & Electric Company in connection with a lawsuit that was the basis for the movie Erin Brockovich. Among other things, the article states that “ChemRisk has a long, and on at least one occasion fraudulent, history of defending big polluters, using questionable ethics to help their clients avoid legal responsibility for their actions.” Foytlin avers that she and Savage had a reasonable basis from published reports for the statements in the article. In addition, the authors performed some investigation. As stated in the subject article, “[w]hile conducting research for this article, we contacted ChemRisk for an interview with one of the authors of the study on clean-up workers’ health after the BP disaster.” The article goes on to describe the persons interviewed and the authors’ frustration with the interview. The interview, on behalf of the authors, was conducted by Savage over the telephone. It is reasonable to infer that Savage was located in Boston when she conducted the interview.
The subject article does not concern any activities that occurred in Massachusetts. Foytlin avers that she was unaware of any work that ChemRisk performed or was likely to perform in Massachusetts. In her life, Foytlin has spent two days in Massachusetts for reasons unrelated to or concerning the article. She represents that she is “a person of limited means.”
After the article appeared on the Huntington Post website, Foytlin re-posted the article to her “friends” on her Facebook page. She admits that some of her friends on her Facebook page are Massachusetts residents. According to ChemRisk’s complaint, at least 12 out of 103 Facebook friends of Foytlin reside in Massachusetts. She specifically “tagged” the post to at least two Massachusetts residents. ‘Tagging” someone on Facebook is the functional equivalent of sending that person a letter. The author must select the specific individuals whom she wants to tag and then the people who are tagged will receive a notification that they can see the post. Foytlin also posted the article on her Twitter account to 235 followers, at least one of whom is a Massachusetts resident.
Foytlin moves to dismiss the complaint for lack of personal jurisdiction, pursuant to Mass.R.Civ.P. 12(b)(2). She submits affidavits from herself and Savage in support of the motion. ChemRisk submits an affidavit from its president in opposition to the motion.
ANALYSIS
When faced with a motion to dismiss for lack of personal jurisdiction under Mass. R.Civ.P. 12(b)(2), the plaintiff must establish “sufficient facts on which to predicate jurisdiction over the defendant.” Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 13, 3 (1979). The court may determine a Rule 12(b)(2) motion on affidavits and other written evidence using the prima facie standard. Cepeda v. Kass, 62 Mass.App.Ct. 732, 737 (2004). Under this standard, the plaintiffs burden is one of production, not persuasion, and the court takes specific facts alleged by the plaintiff to be true, whether controverted or not. Id. at 738. Uncontroverted facts provided by defendant may be taken into account. The plaintiff cannot rely upon conclusoiy statements, speculation and implausible inferences to meet its burden.
For a Massachusetts court to exercise jurisdiction over the individual defendant “there must be a statute authorizing jurisdiction and the exercise of jurisdiction must be ‘consistent with basic due process requirements mandated by the United States Constitution. Bulldog Investors Gen. Partnership v. Secretary of the Commonwealth, 457 Mass. 210, 215 (2010), citing Intech, Inc. v. Triple ”C" Marine Salvage, Inc., 444 Mass. 122, 125 (2005), quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). ChemRisk, in its complaint, asserts jurisdiction under G.L.c. 223A, 23(c) on the ground that Foytlin caused tortious injury in Massachusetts. ChemRisk also alleges that Sections 3(a) and 3(b) are implicated because, by collaborating with a Massachusetts resident (Savage) to publish the defamatory article, Foytlin transacted business in Massachusetts and contracted to supply services in Massachusetts. Further analysis of which section of the Massachusetts longarm statute is implicated may be sidestepped, however, because the Supreme Judicial Court has interpreted the state’s longarm statute “as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.” “Automatic” Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972). See also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (2002) (“we may sidestep the statutory inquiry and proceed directly to the constitutional analysis . . .”).
The due process clause of the Constitution protects an individual’s liberty interest in not being subject to the binding judgment of a forum with which she has established no meaningful contacts. Due process requires the court to determine whether the defendant maintains “certain minimum contacts” with the forum state “such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). “The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant ‘focuses on ’’the relationship among the defendant, the forum and the litigation." ’ Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014) (citations omitted). “The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant’s conduct connects him to the forum in a meaningful way.” Id. at 1125. “(PJhysical entry into the State—either by the defendant in person or *132 through an agent, goods, mail, or some other means— is certainly a relevant contact.” Id. at 1122.
“Specific jurisdiction exists when there is a demonstrable nexus between a plaintiffs claims and a defendant’s forum-based activities, such as when the litigation itself is founded directly on those activities.”[2] Massachusetts Sch. of Law v. American Bar Ass’n, 142 F.3d 26, 34 (1st Cir. 1998) (citation omitted). The test for finding specific jurisdiction requires a three-part analysis. “An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction.” Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d, 284, 288 (1st Cir. 1999). “First, the claim underlying the litigation must directly arise out of, or relate to, the defendant’s forum-state activities. Second, the defendant’s in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state’s laws and making the defendant’s involuntary presence before the state’s courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.” Daynard, 290 F.3d at 60, quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995).
In connection with addressing the three elements, the court must consider what effect Foytlin’s collaboration with Savage, a Boston resident, has on the analysis. ChemRisk argues that Foytlin’s relationship with Savage is such that Savage’s contacts with Massachusetts should be imputed to Foytlin. It is undisputed that Foytlin and Savage collaborated on the subject article. In fact, Savage, located in Massachusetts, conducted the investigation for the article by having one or more telephone conferences with Chem-Risk in 2011. It is also undisputed that Foytlin and Savage, located in Louisiana and Boston, respectively, communicated regularly about the subject article. In sum, Foytlin and Savage were involved in a joint venture with respect to investigating, drafting and publishing the subject article.
“For purposes of personal jurisdiction, the actions of an agent maybe attributed to the principal. Whether or not an agent is initially authorized to act on behalf of a principal, the agent’s actions may be attributable to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent’s conduct.” Daynard, 290 F.3d at 55. A joint venture between two parties “suffices to bring the parties within the rule that permits imputation of contacts for jurisdictional purposes.” Id. at 56. Here, there is no question that Foytlin and Savage were engaged in a joint venture to investigate and publish the offending article. Moreover, the publication of the subject article by Foytlin served to ratify the investigatory work done by Savage in Massachusetts. For purposes of the three-pronged test for evaluating the assertion of personal jurisdiction, Savage’s contacts with Massachusetts are imputed to Foytlin.
The first element that must be satisfied is that the claim underlying the litigation must directly arise out of, or relate to, the defendant’s forum-state activities— the so-called “relatedness” test. The plaintiff must establish that the “cause in fact (i.e., the injury would not have occurred ‘but for’ the defendant’s forum-state activity) and legal cause (i.e., the defendant’s in-state conduct gave birth to the cause of action)” is met. Massachusetts Sch. of Law, 142 F.3d at 35; Let’s Adopt! Global, Inc., v. Macey, 2015 WL 2062190 at *4 (Sup.Ct. 2015) [32 Mass. L. Rptr. 573] (Tucker, J.).
ChemRisk’s defamation claim arises directly from the investigation, preparation and publication of the subject article. Because that conduct occurred in Massachusetts, through Savage and by imputation, Foytlin, the relatedness test is met. In addition, the republication of the article by Foytlin through posting on Facebook and tagging to Massachusetts residents adds to the connection with Massachusetts.
The second element that must be satisfied in order to assert jurisdiction is that the conduct of Foytlin and Savage constitutes a purposeful availment of the privilege of conducting activities in Massachusetts such that it would be foreseeable to be haled into court in Massachusetts to answer to a claim that the conduct was wrongful. “The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant’s ‘random, isolated, or fortuitous’ contacts with the forum state.” Sawtelle v. Farrell, 70 F.3d 1381, 1390 (1st Cir. 1995), quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984). “The notion of purposeful availment rests upon the concepts of voluntariness and foreseeability.” Let’s Adopt! Global, Inc., at *5.
Foytlin voluntarily associated with Savage and worked in a joint venture with her. Savage’s conduct in Boston is imputed to Foytlin as if Foytlin herself researched, investigated and wrote the article in Massachusetts. That imputation is enough for jurisdiction standing by itself.
Moreover, the Supreme Court’s analysis in the 2014 decision in Walden v. Fiore, cited supra, provides additional support to the purposeful availment inquiry. Walden addressed the “effects” test that had been developed after the Court’s 1984 decision in Colder v. Jones, 465 U.S. 783 (1984). Walden, 134 S.Ct. at 1123-24. Colder, a defamation case, approved the exercise of jurisdiction over two Florida-based reporters by a California court. The reporters were the authors of an allegedly defamatory article about a California resident. The article was published in a newspaper with a significant circulation in California and elsewhere. The Court found that because defendants knew that the “brunt” of the injury to the plaintiffs reputation would be suffered in California, the defendants had purposely availed themselves of *133 the California forum. Id. at 788-89. Subsequent decisions developed an “effects” test focusing on the place of substantial harm to the victim of the defamation. Walden, however, noted that the strength of defendants’ connection to California in Calder “was largely a function of the nature of the libel tort.” Walden, 134 S.Ct. at 1124. The Court stated that in a defamation action, the injury occurs wherever people read the article, citing and quoting Keeton v. Hustler Magazine, Inc., 465 U.S. at 111 (“The tort of libel is generally held to occur wherever the offending matter is circulated”). Id. Going further, the Court in Walden refocused the inquiry on the defendant’s conduct rather than the place of injury or effect. “The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant’s conduct connects him to the forum in a meaningful way.” Id. at 1125. In the present case, the evidence is that the offending article was investigated and authored by the team of Savage and Foytlin in Massachusetts, and intentionally published by them to readers in Massachusetts. Under Walden and Hustler Magazine, that purposeful conduct is enough to subject Foytlin to jurisdiction in Massachusetts.
Finally, if the first two elements of the test for specific jurisdiction are fulfilled, the court must still determine whether the exercise of personal jurisdiction is reasonable in light of the so-called “Gestalt” factors. This requires analysis of “(1) the defendant’s burden of appearing; (2) the forum state’s interest in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the judicial system’s interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantial social policies.” Sawtelle, 70 F.3d at 1394. Foytlin makes a sympathetic, but ultimately unsuccessful, showing with respect to the first factor. She is a single mother of six, living in Louisiana, without substantial financial resources. The record reflects, however, that when she wishes to engage in related “activist” activity she is willing and able to travel to Washington, D.C. and other out-of-state locations on multiple occasions, including taking the time to walk to D.C. from Louisiana. She has traveled to Massachusetts previously. She is represented by able counsel from both Massachusetts and New York. Her personal “burden of appearing” in Massachusetts may be kept to a minimum. The burden is not enough to outweigh the other Gestalt factors.
Personal jurisdiction over Savage is not contested. Thus, this dispute will be adjudicated here, and the state has an interest in resolving the matter with all necessary parties. If the court were to decline jurisdiction over Foytlin, ChemRisk would be left to abandoning its claim against Foytlin or litigating the same case in two different jurisdictions. That choice is an unfair burden on plaintiff and two litigations is certainly not in the judicial system’s interest in obtaining the most effective resolution of the controversy. Finally, social policy should also favor a single litigation to resolve the matter. In short, the Gestalt factors favor the exercise of personal jurisdiction over Foytlin.
CONCLUSION
The motion of defendant, Cherri Foytlin, to dismiss for lack of personal jurisdiction is DENIED, for the reasons stated above.

 ChemRisk rests its argument for personal jurisdiction over Foytlin based on the concept of specific jurisdiction, only.